**In re William A. CATALDO, Debtor.**

**Patricia M. COUGHLIN, Appellant,**

**v.**

**William A. CATALDO, Appellee.**

**BAP No. HI–97–1085–MEJRY.**
**Bankruptcy No. 95–00786.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 27, 1998.

Filed August 24, 1998.

**428**

Christopher A. Dias, David C. Schutter & Associates, Honolulu, HI, for Patricia M. Coughlin.

Randolph R. Slaton, Honolulu, HI, for William Anthony Cataldo.

Before MEYERS, JONES and RYAN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

The bankruptcy court allowed Chapter 7 debtor William A. Cataldo ("Debtor") to exempt his $2 million house from the bankruptcy estate. Creditor Patricia M. Coughlin ("Coughlin") objects.

We **AFFIRM.**

### II

### FACTS

Since February 1985, the Debtor and his wife, Jany A. Cataldo ("Jany"), owned a home as tenants by the entirety. They sold that home and bought another residence ("Property") on May 14, 1987 for $1,950,000 as tenants by the entirety. They recorded the deed with the State of Hawaii the next day.

In March 1988, Coughlin filed a complaint against the Debtor in Hawaii state court. In September 1992, the state court determined that the Debtor had breached his contractual obligation to give Coughlin 50 percent of the shares in his corporation, and that Coughlin was entitled to a judgment that she was a 50 percent shareholder in the corporation since 1979, with all the rights associated with such

status. Subsequent bankruptcy cases filed by that corporation and the Debtor precluded a determination of damages owed to Coughlin.

In January 1993, the Debtor and Jany separated. The Debtor moved out of the Property. Jany and their two children remained in the Property.

On May 25, 1995, Jany filed a "Complaint for Divorce" in Hawaii state court. Eleven days later, Jany and the Debtor filed a "Stipulation for Dismissal of Complaint for Divorce."

On that day, June 5, 1995, the Debtor filed his bankruptcy petition. In his schedules, he valued the Property at $2,000,000 and listed a $92,000 secured liability on it. He claimed the Property exempt pursuant to Bankruptcy Code ("Code") Section 522(b)(2)(B).

Coughlin filed an objection to the exemption claim. The matter was heard on December 18, 1996. An order denying Coughlin's objection to the exemption was entered on January 9, 1997.

On January 15, Coughlin moved for reconsideration of the order, based on the discovery of new evidence. She asserted that on December 2, 1996, her counsel had received two faxes from an anonymous source stating that, among other things, Jany lied about the Property and that the Debtor coerced Jany into dismissing the Complaint for Divorce. The bankruptcy court denied the request for reconsideration. Coughlin appeals from the order denying her objection to the Debtor's exemption and from the order denying her motion for reconsideration.

### III

### STANDARD OF REVIEW

▌ The construction of state law in determining the scope of a statutory exemption is reviewed *de novo*. *In re Turner*, 186 B.R. 108, 112 (9th Cir. BAP 1995). Exemption statutes in bankruptcy law should be construed liberally in favor of the debtor. *In re Neuton*, 922 F.2d 1379, 1384 (9th Cir. 1990). "The question of whether the debtor acted with intent to defraud in converting nonexempt property into exempt property is

a question of fact, on which the bankruptcy court's finding will not be disturbed unless clearly erroneous." *In re Armstrong,* 931 F.2d 1233, 1237 (8th Cir.1991).

## IV

## DISCUSSION

■ Code Section 522(b)(2)(B) allows a debtor to exempt from property of the estate

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

The Debtor and Jany held the Property as tenants by the entirety. "In bankruptcy actions, the federal courts decide the merits of state exemptions, but the validity of the claimed state exemption is controlled by the applicable state law." *In re Anderson,* 824 F.2d 754, 756 (9th Cir.1987). Under Hawaiian law, an estate by the entirety may not, without the consent of both spouses, be levied upon for the separate debts of either spouse. *Sawada v. Endo,* 57 Haw. 608, 617, 561 P.2d 1291 (1977). Since only the Debtor was liable for the debt to Coughlin, the Property held by both the Debtor and Jany as tenants by the entirety was exempt from process under Hawaiian law. Under Code Section 522(b)(2)(B), the Property is exempt from the bankruptcy estate.

### A. *Coughlin's Claim of an Interest in the Property*

Coughlin asserts that some of the money used to purchase the Property came from the Debtor's salary and bonuses from the corporation. Since she was wrongfully deprived of income from the corporation, some of the money used to purchase the Property rightfully belonged to her.

■ This seems to be an argument for imposition of a constructive trust on the Property, rather than a reason to deny the claim of exemption. The fact is that the Debtor and Jany hold the Property as tenants by the entirety. At this point, Coughlin's assertion that her money was used to

purchase the Property is not sufficient to defeat the recorded title and does not impact the Debtor's right to exempt the Property.

### B. *The Allegation of Fraudulent Planning*

■ Coughlin contends that the Debtor is not entitled to the exemption because he fraudulently converted non-exempt assets to exempt assets. Under the Bankruptcy Act, "the purposeful conversion of non-exempt assets into exempt assets immediately prior to bankruptcy is not fraudulent per se." *In re Jackson,* 472 F.2d 589, 590 (9th Cir.1973). The Code did not substantively alter the law in this regard. The House and Senate Reports accompanying the Code state:

> As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to · which he is entitled under the law.

S.Rep. No. 95–989, at 76 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5860; H.R.Rep. No. 95–595, at 361 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6317. Coughlin concedes "it is clear that in the Ninth Circuit a debtor may convert non-exempt property into exempt property even on the eve of bankruptcy." *In re Roosevelt,* 176 B.R. 200, 208 (9th Cir. BAP 1994). "The Code presumes that creditors know the law and bear the risk that debtors will position their property to their best advantage." *Id.*

■ Yet Coughlin argues that a debtor may not *fraudulently* convert non-exempt assets to exempt assets. She points out that even under Hawaii law, "the creation of a tenancy by the entirety may not be used as a device to defraud existing creditors." *Sawada v. Endo, supra,* 57 Haw. at 616; 561 P.2d 1291. The tenancy by the entirety was created ten months before Coughlin filed her complaint against the Debtor and eight years before the bankruptcy petition was filed. The Debtor and Jany had owned their previous home as tenants by the entirety. Coughlin has not demonstrated that the tenancy by the entirety was created to defraud existing creditors.

Moreover, most courts hold that fraudulent conversion of nonexempt property to exempt property does not affect the granting of exemptions under Code Section 522, but rather may be a basis for denying discharge under Section 727. *See, e.g., Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 874 (8th Cir.1988) ("This blanket approval of conversion is qualified, however, by denial of discharge if there was extrinsic evidence of the debtor's intent to defraud creditors."). Even in Section 727(a) proceedings, many courts disregard both the amount claimed exempt and any evidence of the debtor's desire to shield assets, instead denying discharge "only where the debtor has committed some act extrinsic to the conversion which hinders, delays or defrauds." *Matter of Smiley,* 864 F.2d 562, 567 (7th Cir.1989).

In a case similar to the instant one, *In re Brown,* 88 B.R. 280 (Haw.1988), the bankruptcy court dismissed the debtor's case for bad faith pursuant to Code Section 707(a). The primary basis for the bad faith finding was that the debtor had put all the profits of his medical practice into a building he and his wife owned as tenants by the entirety.

The appellate record shows that Coughlin was unsuccessful in her Section 523 action, but it is unclear whether Coughlin has filed a complaint under Section 727 or sought dismissal of the case under Section 707(a). It seems that those types of actions would be better suited to giving Coughlin relief than the objection to the exemption claim.

Coughlin has cited one case which denied a debtor's exemptions after extrinsic evidence showed that the debtor converted non-exempt property into exempt property with the intent to defraud his creditors. *In re Schwarb,* 150 B.R. 470, 472 (M.Fla.1992). *Schwarb* held that "a showing that the conversion of a non-exempt asset into an exempt asset for the specific purpose of placing the asset out of the reach of creditors is sufficient to deprive a debtor of his right to claim that property as exempt." *Id.* at 473. This holding goes against the weight of authority. In fact, *Schwarb* has been called "a relatively extreme decision that even its author has retreated from to a degree." L. Ponoroff,

*Exemption Limitations: A Tale of Two Solutions,* 71 Am.Bankr.L.J. 221, 232 (1997).

Further, even under the reasoning of *Schwarb,* Coughlin has not shown fraudulent exemption planning. *Schwarb* stated that an exemption might be defeated by evidence that the debtor commenced pre-bankruptcy planning after consulting with bankruptcy counsel or just before a judgment creditor was to levy, attach or garnish the non-exempt property. *Id.* at 472. In *Schwarb,* the conversion occurred after a judgment was entered against the debtor and approximately one month before the bankruptcy filing. Here, the Property was purchased as a tenancy by the entirety ten months before Coughlin's complaint was filed and eight years before the bankruptcy case was filed.

Coughlin also maintains that the stipulation to withdraw the complaint for divorce is evidence of fraud. She asserts that the complaint was withdrawn so as not to destroy the tenancy by the entirety. This allegation does not imply fraud and is insufficient to satisfy Coughlin's burden of proving that the exemption is improper. *See* Fed.R.Bankr.P. 4003(c); *In re Shelley,* 184 B.R. 356, 360 (9th Cir. BAP 1995), *aff'd and adopted,* 109 F.3d 639 (9th Cir.1997).

Indicia of fraudulent use of an exemption include conduct intentionally designed to materially mislead or deceive creditors about the debtor's position; use of credit to buy exempt property; conversion of a very great amount of property; and conveyances for less than adequate consideration. *Armstrong, supra,* 931 F.2d at 1237. Coughlin contends that an indication of fraud is present here, namely that the Property was purchased in part with a $400,000 bank loan. This fact does not show fraud. If anything, it impairs Coughlin's argument. It shows that the Property was mortgaged for only 20 percent of its value at the time of purchase.

### C. *Equitable Considerations*

Coughlin also asserts that it is inequitable for the Debtor to receive a discharge while keeping property valued at $2,000,000. We may not disregard Hawaiian law on equitable grounds. The Hawaii legislature chose

to enact the exemption law without limiting the amount of the exemption. We must assume that the outcome in this case was within the realm of results anticipated by the State of Hawaii.

 We have stated: "Notwithstanding a liberal interpretation of debtor exemptions, a bankruptcy court, standing as a court of equity, must not tolerate actions by a debtor which cause inequitable distributions of estate property." *In re Glass*, 164 B.R. 759, 764 (9th Cir. BAP 1994), *aff'd*, 60 F.3d 565 (9th Cir.1995). In affirming the *Glass* case, the Court of Appeals remarked that a debtor has the duty to do equity before he may claim his right to exemptions. A positive fraud should not be sustained by the bankruptcy court. *In re Glass*, 60 F.3d 565, 570 (9th Cir.1995). In *Glass*, the debtor transferred assets to his son for no consideration 37 days before the bankruptcy filing, and did not initially disclose the interest on his schedules. After the trustee threatened to bring an avoidance action, the debtor's son reconveyed the assets and the debtor scheduled them. We held that under Code Section 522(g) the debtor was not entitled to exempt the property, since he had concealed the property and the trustee had recovered it.

This case is distinguishable. There was no concealment here. Title to the Property was recorded as a tenancy by the entirety eight years before the petition was filed. The Debtor has not committed a fraudulent act. We will not renounce state law just because it may seem unfair.

### D. *The Motion for Reconsideration*

Finally, Coughlin asserts that the trial court erred in not reconsidering its ruling. Coughlin's motion for a rehearing was based on the anonymous faxes which she contended were newly discovered evidence.

 Coughlin admits that her attorney received the faxes sixteen days before the hearing on the exemptions and 38 days before entry of the order allowing the exemptions. The trial court correctly refused to regard the faxes as newly discovered evidence.

## V

### CONCLUSION

Pursuant to Code Section 522(b)(2)(3) and Hawaiian law, the Debtor correctly claimed the Property exempt. Coughlin did not show fraudulent bankruptcy planning, even assuming fraudulent conversion of nonexempt assets is an appropriate basis for objecting to an exemption claim.

Although allowing the Debtor to discharge his debts while keeping a $2,000,000 residence may seem inequitable, we should not use equitable considerations to disregard the clear mandates of the Bankruptcy Code and Hawaiian law.

Finally, the bankruptcy court correctly refused to view the faxes as newly discovered evidence, because they were received weeks before the hearing on the objection to the exemption.

**AFFIRMED.**